1

KENEALY LAW OFFICES

2

Jack Kenealy, SBN 76987

Cecilia Balenti-Moddelmog, SBN 137506

3

327 College Street, Suite 110

4

Woodland, California 95695

Telephone: (530) 669-7736

5

Facsimile: (530) 669-3615

6

kenealylaw@ymail.com

Attorneys for Plaintiff, BOAZ Q. BALENTI

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

BOAZ Q. BALENTI,                                    )    **CASE NO:**

12

       Plaintiff,                                )    **SACV10-01159 CJC MLG**

13

                                   )    **COMPLAINT FOR DAMAGES;**

vs.                                                      )    **CIVIL RIGHTS VIOLATIONS**

14

                                   )    **(42 USC § 1983, 1984 1986 and**

15

CITY OF ANAHEIM POLICE                     )    **1988) AND SUPPLEMENTAL**

OFFICER SCOTT McMANUS (IN HIS         )    **STATE LAW CLAIMS**

16

OFFICIAL AND PERSONAL                       )

17

CAPACITIES); CITY OF ANAHEIM           )

POLICE OFFICER RONALD                       )    **[DEMAND FOR JURY TRIAL]**

18

LEDESMA (IN HIS OFFICIAL AND           )

19

PERSONAL CAPACITIES); CITY OF         )

ANAHEIM POLICE OFFICER CRAIG         )

20

FRIESEN (IN HIS OFFICIAL AND             )

21

PERSONAL CAPACITIES);  CITY OF        )

ANAHEIM POLICE OFFICER                     )

22

KENNETH WEBER (IN HIS                        )

23

OFFICIAL AND PERSONAL                       )

CAPACITIES); CITY OF ANAHEIM           )

24

POLICE OFFICER JAMES WEBER             )

25

(IN HIS OFFICIAL AND PERSONAL         )

CAPACITIES); UNIDENTIFIED CITY         )

26

OF ANAHEIM POLICE OFFICERS           )

27

DOES 1-10; CITY OF ANAHEIM;             )

CITY OF ANAHEIM POLICE                     )

28

DEPARTMENT; CITY OF ANAHEIM       )

-1-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

1  CHIEF OF POLICE      JOHN
2  WELSTER; CITY OF BUENA PARK
   POLICE OFFICER THOMAS REYES
3  (IN HIS OFFICIAL AND PERSONAL
   CAPACITIES); CITY OF BUENA
4  PARK POLICE OFFICER ROGER
5  PLUMLEE (IN HIS OFFICIAL AND
   PERSONAL CAPACITIES); CITY OF
6  BUENA PARK POLICE OFFICER
7  FRANK NUNES (IN HIS OFFICIAL
   AND PERSONAL CAPACITIES);
8  AND UNIDENTIFIED CITY OF
9  BUENA PARK POLICE OFFICERS
   DOES 10-20; CITY OF BUENA
10 PARK; CITY OF BUENA PARK
11 POLICE DEPT; BUENA PARK
   POLICE CHIEF TOM MONSON;
12 COUNTY OF ORANGE; ORANGE
13 COUNTY DISTRICT ATTORNEY
   TONY RACKAUCKAS (IN HIS
14 OFFICIAL AND PERSONAL
15 CAPACITIES); and unidentified
   administrative agencies DOES 20
16 through 30, inclusive,
17
18            Defendants.
19 _____
20 ///
21
22 ///
23
   ///
24
25 ///
26
   ///
27
28       COMES NOW PLAINTIFF, BOAZ Q. BALENTI and alleges as follows:

-2-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

## **INTRODUCTION**

1.   This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983,  1985, 1986 and 1988 and the Fourth and Fourteenth Amendments of the United States Constitution, and for Supplemental State Law Claims, against Defendants, CITY OF ANAHEIM POLICE OFFICER SCOTT McMANUS (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER RONALD LEDESMA (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER CRAIG FRIESEN (IN HIS OFFICIAL AND PERSONAL CAPACITIES);  CITY OF ANAHEIM POLICE OFFICER  KENNETH WEBER (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER JAMES WEBER (IN HIS OFFICIAL AND PERSONAL CAPACITIES); UNIDENTIFIED CITY OF ANAHEIM POLICE OFFICERS DOES 1-10 (IN THEIR OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM; CITY OF ANAHEIM POLICE DEPARTMENT; CITY OF ANAHEIM CHIEF OF POLICE JOHN WELSTER; CITY OF BUENA PARK POLICE OFFICER THOMAS REYES (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF BUENA PARK POLICE OFFICER ROGER PLUMLEE (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF BUENA PARK POLICE OFFICER FRANK NUNES (IN HIS OFFICIAL AND PERSONAL CAPACITIES); AND UNIDENTIFIED CITY OF BUENA PARK POLICE OFFICERS DOES 10-20; CITY OF BUENA PARK; CITY OF BUENA PARK POLICE DEPT; BUENA PARK POLICE CHIEF TOM MONSON; COUNTY OF ORANGE; ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS; and unidentified administrative agencies DOES 20 through 30,

Jurisdiction is founded on the basis of 28 U.S.C. §§1331 and 1343 and on the supplemental jurisdiction of this Court to entertain claims arising under state law.  Venue is proper in the Central District of California, Santa Ana, because the

-3-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

1   herein described incident took place in or about the Cities of Anaheim and Buena

2   Park, California.

3       2.    It is herein alleged that Defendants, CITY OF ANAHEIM POLICE

4   OFFICER SCOTT McMANUS (IN HIS OFFICIAL AND PERSONAL

5   CAPACITIES); CITY OF ANAHEIM POLICE OFFICER RONALD

6   LEDESMA (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF

7   ANAHEIM POLICE OFFICER CRAIG FRIESEN (IN HIS OFFICIAL AND

8   PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER

9   KENNETH WEBER (IN HIS OFFICIAL AND PERSONAL CAPACITIES);

10   CITY OF ANAHEIM POLICE OFFICER JAMES WEBER (IN HIS OFFICIAL

11   AND PERSONAL CAPACITIES); UNIDENTIFIED CITY OF ANAHEIM

12   POLICE OFFICERS DOES 1-10; CITY OF ANAHEIM; CITY OF ANAHEIM

13   POLICE DEPARTMENT; CITY OF ANAHEIM CHIEF OF POLICE

14   JOHN WELSTER; CITY OF BUENA PARK POLICE OFFICER THOMAS

15   REYES (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF

16   BUENA PARK POLICE OFFICER ROGER PLUMLEE (IN HIS OFFICIAL

17   AND PERSONAL CAPACITIES); CITY OF BUENA PARK POLICE

18   OFFICER FRANK NUNES (IN HIS OFFICIAL AND PERSONAL

19   CAPACITIES); AND UNIDENTIFIED CITY OF BUENA PARK POLICE

20   OFFICERS DOES 10-20; CITY OF BUENA PARK; CITY OF BUENA PARK

21   POLICE DEPT; BUENA PARK POLICE CHIEF TOM MONSON; COUNTY

22   OF ORANGE; ORANGE COUNTY DISTRICT ATTORNEY TONY

23   RACKAUCKAS, and unidentified administrative agencies DOES 20 through 30,

24   applied and/or approved of the application of excessive force against Plaintiff

25   BOAZ BALENTI ("Mr. BALENTI") in violation of his Fourth and Fourteenth

26   Amendment and California law;  conspired to and did maliciously prosecute

27   claims against Mr. BALENTI for assault on a police officer; and took other

28   actions, including fabrication and withholding of evidence, failing to property

-4-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

1   investigate the filing of criminal charges against defendant CITY OF ANAHEIM

2   POLICE OFFICER SCOTT McMANUS with knowledge and intent, and in

3   violation of state and federal law.

### JURISDICTION

5   3.   Plaintiff  BOAZ Q. BALENTI's, Claims for Relief arise under and

6   violate the following laws:

7   a.   Federal Civil Rights Act under 42 U.S.C. §§ 1983, 1985,

8   1986, and 1988;

9   b.   Monell v. Department of Social Services

10   c.   Equal Protection Clause and Due Process Clauses of the

11   Fourth and Fourteenth Amendments of the United States

12   Constitution.

13   4.   The jurisdiction of this court is, therefore, founded on federal

14   question jurisdiction pursuant to 28 U.S.C. §1331 and 1343, and over

15   supplemental claims for relief arising under state law pursuant to 28 U.S.C.

16   §1367(a).

### VENUE

18   5.   At all times relevant herein, Defendants, and each of them were

19   public agencies and/or duly appointed police officers, sergeants, captains,

20   commanders, and/or civilian employees, agents and representatives of the public

21   agencies, CITY OF BUENA PARK, CITY OF ANAHEIM, ORANGE COUNTY

22   DISTRICT ATTORNEY'S OFFICE, and were acting under color and/or

23   authority of law, to wit, under color of the statutes, ordinances, regulations,

24   policies, customs and usages these agencies.

25   6.   Venue is proper in the Central District Court of California in that all

26   injuries complained of herein were caused and suffered in the County of Orange,

27   State of California, as more fully set forth herein.  Defendants are properly before

28   this Court because "a substantial part of the events upon which this action is

-5-

1    based occurred in this district." 28 U.S.C. §1891(a)(2) and §1343 and, and over

2    supplemental claims for relief arising under state law pursuant to 28 U.S.C.

3    §1367(a).

4    **PARTIES**

5          7.     Plaintiff BOAZ Q. BALENTI is and was at all times relevant a

6    resident of Orange County, California.

7          8.     Plaintiff is unaware of the true names, identities and/or capacities of

8    DOES 1-30 herein and therefore sues said Defendants by such fictitious names.

9    Plaintiff will amend this complaint, by leave of Court, if necessary, to allege their

10   true names, identities and/or capacities.

11         9.     At all times mentioned herein, Defendant CITY OF ANAHEIM is

12   and was a public entity, duly organized and existing under and by virtue of the

13   laws of the State of California.

14         10.     At all times mentioned herein, Defendant CITY OF ANAHEIM

15   POLICE DEPARTMENT (sometimes hereinafter referred to as APD) is and was

16   a state agency duly organized and existing under and by the laws of the State of

17   California and/or was a department of defendant CITY OF ANAHEIM.  Plaintiff

18   is informed and believes and thereon alleges that defendant APD was the

19   employer of Defendants,  CITY OF ANAHEIM POLICE OFFICER SCOTT

20   McMANUS; CITY OF ANAHEIM POLICE OFFICER RONALD LEDESMA;

21   CITY OF ANAHEIM POLICE OFFICER CRAIG FRIESEN, CITY OF

22   ANAHEIM POLICE OFFICER  KENNETH WEBER; CITY OF ANAHEIM

23   POLICE OFFICER JAMES WEBER; UNIDENTIFIED CITY OF ANAHEIM

24   POLICE OFFICERS DOES 1-10.

25         11.     At all times mentioned herein, Defendant CITY OF BUENA

26   PARK is and was a public entity, duly organized and existing under and by virtue

27   of the laws of the State of California.

28

-6-

Complaint for Damages

1    12.    At all times mentioned herein, Defendant BUENA PARK POLICE

2 DEPARTMENT (sometimes hereinafter referred to as BPPD) is and was a state

3 agency duly organized and existing under and by the laws of the State of

4 California and/or was a department of defendant CITY OF BUENA PARK.

5 Plaintiff is informed and believes and thereon alleges that defendant BPPD was

6 the employer of Defendants, CITY OF BUENA PARK POLICE OFFICER

7 THOMAS REYES; CITY OF BUENA PARK POLICE OFFICER ROGER

8 PLUMLEE; CITY OF BUENA PARK POLICE OFFICER FRANK NUNES;

9 AND UNIDENTIFIED CITY OF BUENA PARK POLICE OFFICERS DOES

10 10-20.

11    13.    At all times relevant herein, Defendant, ANAHEIM POLICE

12 OFFICER CRAIG FRIESEN and BUENA PARK POLICE OFFICER THOMAS

13 REYES had supervisory responsibilities as duly appointed police officers,

14 sergeants, captains, commanders, and/or civilian employees, agents and

15 representatives of the defendants CITY OF ANAHEIM, APD, CITY OF BUENA

16 PARK and/or BPPD and/or its employees, agents and representatives and were

17 acting under color of law, to wit, under color of the statutes, ordinances,

18 regulations, policies, customs and usages of BPPD and/or CITY.

19    14.    Said defendants, and each of them, were specifically authorized by

20 defendant CITY OF ANAHEIM and CITY OF BUENA PARK and/or the APD

21 BPPD to perform the duties and responsibilities of sworn police officers of and

22 for these entities, and all acts hereinafter complained of were performed by them

23 within the course and scope of their duties as police officers and officials for said

24 defendant, and its police department, and are herein sued in their individual

25 capacities and in their official capacities as police officers, sergeants, captains,

26 commanders, supervisors, policy makers and/or as other employees of the APD

27 and BPPD.  Said defendants, and each of them, at all times relevant hereto, were

28 acting under color of law, to wit, under the color of the statutes, ordinances,

-7-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

regulations, policies, customs, practices and usages of defendant CITY, and/or its police department.

15.     Defendants CITY OF ANAHEIM, APD, CITY OF BUENA PARK and/or BPPD encouraged, assisted, ratified and/or with deliberate indifference failed to prevent and/or conspired to commit all of the herein acts and omissions of defendants, and each of them.

16.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-10 AND 11-20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege said defendants' true names and capacities when such are ascertained. Plaintiff is informed and believe and thereon allege that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by the acts and/or omissions of said fictitiously name defendants.

17.     At all times mentioned herein, Defendant JOHN WELSTER ("WELSTER") is and was the duly authorized chief of police for Defendant APD, and under the laws of the State of California, and under the laws, ordinances, rules and regulations and in the employ of the CITY OF ANAHEIM, is and was the official policy maker for Defendant APD and all of its divisions and police stations. Defendant WELSTER is sued individually and in his official capacity as chief of police and head policy maker of Defendant APD.

18.     Defendant WELSTER is, and at all times relevant herein was, an employee of the CITY OF ANAHEIM, acting within his capacity as employee, agent and servant of Defendant CITY OF ANAHEIM. Defendant WELSTER was at all times alleged herein acting within the course and scope of that employment and agency, as duly appointed chief of police, and as the primary policy maker of the APD, with the authority to develop, adopt, implement, rescind and abolish all policies, practices, procedures and customs of the APD.

-8-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

19.    At all times mentioned herein, Defendant TOM MONSON ("MONSON") is and was the duly authorized chief of police for Defendant BPPD, and under the laws of the State of California, and under the laws, ordinances, rules and regulations of the CITY OF BUENA PARK, is and was the official policy maker for Defendant BPPD and all of its divisions and police stations. Defendant MONSON is sued individually and in his official capacity as chief of police and head policy maker of Defendant BPPD.

20.    Defendant MONSON is, and at all times relevant herein was, an employee of the CITY OF BUENA PARK, acting within his capacity as employee, agent and servant of Defendant CITY OF BUENA PARK. Defendant MONSON was at all times alleged herein acting within the course and scope of that employment and agency, as duly appointed chief of police, and as the primary policy maker of the BPPD, with the authority to develop, adopt, implement, rescind and abolish all policies, practices, procedures and customs of the BPPD.

21.    At all times mentioned herein, Defendant COUNTY OF ORANGE (sometimes hereinafter referred to as COUNTY) is and was a public entity, duly organized and existing under and by virtue of the laws of the State of California.

22.    At all times mentioned herein, Defendant COUNTY is and was a state agency duly organized and existing under and by the laws of the State of California. Plaintiff is informed and believes and thereon alleges that Defendant ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS (sometimes hereinafter referred to as  RACKAUCKAS) was an employee of COUNTY.

23.    At all times relevant herein, Defendant and each of them, including DOES 1-10 and 11- 20 were supervisors, employees and/or policy makers for defendants CITY OF ANAHEIM, CITY OF BUENA PARK, COUNTY, APD and/or BPPD, and SUPERVISING ADMINISTRATIVE AGENCIES 21-30,

-9-

1    which employed unlawful, organized and illegal customs and practices of

2    excessive force, false arrests which lacked probable cause.  Said misconduct was

3    encouraged, tolerated and condoned by defendants, and each of them.

4          24.    Plaintiff is informed, believes and thereon alleges that Defendant

5    ANAHEIM OFFICER SCOTT McMANUS, and/or DOE Defendants and/or

6    remaining officer-defendants, had a history of conduct including claims against

7    him including for customs and practices which include but are not limited to

8    excessive force, abuse of authority, improper judgment, reckless endangerment,

9    assault and battery of citizens, conduct which placed the public at risk, illegal

10   searches and seizures, arrests which lacked probable cause, and other actions

11   which impinged upon the civil rights of others and/or otherwise suppressed their

12   civil liberties.  Said misconduct was encouraged, tolerated and condoned by his

13   superiors, including defendants, and each of them, leaving Defendants CITY OF

14   BUENA PARK, CITY OF ANAHEIM, APD, BPPD, COUNTY and the

15   RACKAUCKAS, as well as UNIDENTIFIED ADMINISTRATIVE AGENCIES

16   DOES 21-20, who are liable for their negligence in their failure to supervise,

17   train, discipline, monitor and/or terminate ANAHEIM POLICE DEPARTMENT

18   OFFICER SCOTT McMANUS, and or DOE defendants and/or remaining

19   OFFICER DEFENDANTS.

20         25.    At all times relevant to the present complaint, each and every APD

21   AND BPPD Officer Defendant, including DOES 1-20 as well as Defendant

22   RACKAUCKAS were acting within their capacity as employees, agents,

23   representatives and servants of defendants CITY OF ANAHEIM, CITY OF

24   BUENA PARK, APD, BPPD, COUNTY and /or UNIDENTIFIED

25   ADMINISTRATIVE AGENCIES 21-30, which are liable under the doctrine of

26   *respondeat superior*, pursuant to §815.2 of the California Government Code, et

27   al.

28

-10-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

26.    For the purposes of these allegations, Defendants CITY OF ANAHEIM POLICE OFFICERS McMANUS, LEDESMA, FRIESEN, KENNETH WEBER, JAMES WEBER AND UNIDENTIFIED CITY OF ANAHEIM POLICE OFFICERS DOES 1-10 (IN THEIR OFFICIAL AND PERSONAL CAPACITIES) are sometimes hereinafter referred to as "OFFICER DEFENDANTS."

27.    For the purposes of these allegations, Defendants ANAHEIM POLICE OFFICER CRAIG FRIESEN (in his OFFICIAL AND PERSONAL capacities); BUENA PARK POLICE OFFICER THOMAS REYES (in his OFFICIAL AND PERSONAL capacities) , CITY OF ANAHEIM; CITY OF ANAHEIM POLICE DEPARTMENT; CITY OF ANAHEIM CHIEF OF POLICE JOHN WELSTER, (in his OFFICIAL AND PERSONAL capacities), CITY OF BUENA PARK; CITY OF BUENA PARK POLICE DEPT; BUENA PARK POLICE CHIEF TOM MONSON(in his OFFICIAL AND PERSONAL capacities), COUNTY OF ORANGE; ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS (in his OFFICIAL AND PERSONAL capacities),  and unidentified administrative agencies DOES 20 through 30, inclusive (in their individual and administrative capacities) are sometimes hereinafter referred to as "SUPERVISING DEFENDANTS".

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Procedural Background

28.    This case arises out of plaintiff's allegations regarding facts which occurred on February 4, 2008, which Plaintiff alleges constitute Excessive Force which entitles him to compensation under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and California state law.

29.    In a complaint dated February 24, 2008, and filed March 12, 2008, Orange County District Attorney Tony Rackauckus charged Plaintiff with violation of California Penal Code Section 245(c), Aggravated Assault on

-11-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

Firefighter or Peace Officer), a felony, thus barring plaintiff's right to file this action until those charges were resolved in plaintiff's favor pursuant to California Government Code Section 945.3 and tolling any statute applicable to plaintiff's claims based on excessive force until and unless said charges were resolved in plaintiff's favor.

30.    On June 5, 2009, Orange County District Attorney Tony Rackauckus dismissed the charges against Plaintiff for violation of California Penal Code Section 245(c).

31.    On June 5, 2009, Plaintiff pled guilty to the charges relating to the possession of illegal substances and material which were filed concurrently with the charges for Aggravated Assault on a Firefighter or Peace Officer; and Plaintiff was incarcerated for these violations from June 5, 2009 to January 7, 2010 pursuant to California, thus further tolling these claims under California Government Code Section 945.3

**Summary of Relevant Facts**

32.    On the afternoon of February 4, 2008, plaintiff, BOAZ Q. BALENTI, a private citizen, was driving his 2006 Blue Nissan four-door pick-up in a residential area in Anaheim, California, along with a female passenger.  Mr. BALENTI had purchased the Nissan pick-up truck new from a dealership with his earnings as a plumber.  It was registered in his name and financed through Chase Manhattan Bank, with the majority of the principal balance paid off.

33.    Mr. BALENTI is informed and believed and, based thereon, alleges that certain ANAHEIM POLICE DEPARTMENT OFFICERS made specific representations regarding the facts surrounding the incident in question in a "General Offense" report dated February 7, 2008.  It is Mr. BALENTI's information and belief that this report is on file with the ANAHEIM POLICE DEPARTMENT.

-12-

34. Mr. BALENTI noticed a car following him in the residential tract. This car had no special markings or visual or auditory identification of any kind to suggest that it was anything other than a private vehicle and appeared to be driven by a private citizen dressed in street clothes.

35. The individual driving this car was later identified as UNDERCOVER OFFICER RONALD LEDESMA, who claims in an official incident report[1] regarding this matter to have broken away from an undercover narcotics-related surveillance operation to follow Mr. BALENTI, solely on the basis of his observation that Mr. BALENTI's Nissan truck "had dark-tinted windows, violation of 26708(a)(1) CVC."

36. Plaintiff is informed and believes and, based thereon alleges that this undercover narcotics-related surveillance operation related to ANAHEIM POLICE DEPARTMENT efforts to apprehend an individual who had committed a parole violation with respect to a narcotics charge.

37. Plaintiff, Mr. BALENTI, was not that individual, nor was he in violation of any parole order relating to any narcotics charge.

38. UNDERCOVER OFFICER LEDESMA states in his report that, based solely on his observation of the alleged tinted windows, he continued to follow Mr. BALENTI in his undercover vehicle and requested backup from fellow officers on this narcotics surveillance operation, including CITY OF ANAHEIM POLICE DEPARTMENT OFFICERS KENNETH WEBER, ("UNDERCOVER OFFICER KENNETH WEBER") JAMES WEBER ("UNDERCOVER OFFICER JAMES WEBER"), SCOTT McMANUS ("UNDERCOVER OFFICER McMANUS"), along with their sergeant, CRAIG FRIESEN.

---

[1] All further allegation regarding statements attributed to any ANAHEIM POLICE DEPARTMENT OFFICER shall refer to statements which plaintiff is informed and believes have been made in their General Offense Report dated February 7, 2008.

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

39.   These officers did, in fact, break away from the undercover narcotics-related surveillance operation to assist UNDERCOVER OFFICER LEDESMA to assist with his investigation of this alleged minor traffic violation.

40.   At this point, neither UNDERCOVER OFFICER LEDESMA nor any other ANAHEIM POLICE DEPARTMENT officer activated any visual or audio signal which would indicate to Mr. BALENTI that they were following him; that they were police officers; or that their undercover vehicles were police vehicles.

41.   UNDERCOVER OFFICER LEDESMA states that Mr. BALENTI drove within the legal speed limit but that, after following him for several miles, Mr. BALENTI rolled through a stop sign in a residential area, at the corner of South Oriole Place and Myra Avenue  LEDESMA does not allege that MR. BALENTI violated any other law.

42.   Mr. BALENTI pulled to the curb on South Oriole Street and observed that the car which had been following him, which still had no visual or auditory signal to suggest that it was a police vehicle, also pulled to the curb behind him.

43.   UNDERCOVER OFFICER LEDESMA states that, after pulling to the curb behind Mr. BALENTI, he put on a "black police raid vest with the words 'police' attached to the front and rear along with a cloth badge affixed to the upper left chest area" and then he activated red and blue flashing lights on his undercover car.  LEDESMA does not allege that he activated any other visual or audio signal to identify his vehicle as a police vehicle or himself as a police officer, such as a siren, a strobe or so-called "wig-wag" lights.

44.   UNDERCOVER OFFICER LEDESMA states that, as he opened his door,  Mr. BALENTI pulled away from the curb.

45.   Mr. BALENTI was not, as a practical matter, situated in a manner that allowed him to read or otherwise identify any clothing UNDERCOVER

-14-

OFFICER LEDESMA may have been changing into in the car behind him.  Mr.

BALENTI did, however notice that the individual behind him was engaged in

some urgent activity and that he was brandishing a firearm in a highly visible

manner – a fact not mentioned by LEDESMA.

46.    As would reasonably be expected of any private citizen being

followed by what appeared to be another private citizen who had followed him,

parked behind him, and then displayed a weapon, Mr. BALENTI did, in fact, pull

away from the curb, heading out of the relatively quiet and isolated residential

area towards the nearest heavily trafficked area.

47.    Mr. BALENTI did not observe any red and blue lights on the car

which had been following him, nor would he have interpreted any such display of

lights to indicate that this was a police car or a police officer.

48.    UNDERCOVER OFFICER LEDESMA does not allege that he

activated any siren or other device as would be required under Vehicle Code

Section 2800.1(a) to put Mr. BALENTI ON NOTICE that his undercover car was

a police vehicle.  Mr. BALENTI was not, at any time, charged with evading a

police officer nor did his conduct constitute such violation under California law.

49.    UNDERCOVER OFFICER LEDESMA states that he followed Mr.

BALENTI, who continued to drive at a safe, legal speed, from the curb on South

Oriole Place (approximately half a block from the corner of South Oriole Place

and Myra Avenue) to the intersection of Holder Avenue and W. Ball Road.

50.    This trip  (from the South Oriole Place curb to the Holder Avenue

and W. Ball Road intersection) of approximately ½ mile, or less than 2,800 feet,

would have taken approximately 1 minute to travel, driving at the 25-mile per

hour speed limit posted in that tract.

51.    UNDERCOVER OFFICER McMANUS states that he observed Mr.

BALENTI's vehicle come to a stop at the intersection of Holder Avenue and Ball

-15-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

Road, Mr. BALENTI, and then negotiate a right turn onto Ball Road, heading eastbound.

52.    Mr. BALENTI accelerating in the slow lane at the normal speed from this stopped position.

53.    Mr. BALENTI's Nissan truck was not specially equipped with any aftermarket power boosters or anything else that would have increased the speed at which it was able to accelerate.

6.    As he looked over his shoulder to check his "blind spot" and merge out of the slow lane Mr. BALENTI's Nissan truck was impacted head-on by another vehicle traveling towards it from the opposite direction at a great rate of speed.

54.    The BUENA PARK POLICE DEPARTMENT reports that that this collision took place 186 feet from the corner of Holder Avenue and Ball Road.

55.    The other vehicle was a Chevy Blazer driven by an individual later identified as City of Anaheim UNDERCOVER OFFICER SCOTT McMANUS.

56.    Plaintiff is informed and believes and, based thereon alleges, that prior to February 2008 (and as recently as April 2010) the CITY OF ANAHEIM POLICE DEPARTMENT and CITY OF ANAHEIM received multiple claims alleging physical injuries to private citizens arising out of alleged excessive force, impaired judgment and/or abuse of authority by UNDERCOVER OFFICER McMANUS.

57.    Despite these multitude of claims regarding UNDERCOVER OFFICER McMANUS, neither the CITY OF ANAHEIM, THE CITY OF ANAHEIM POLICE DEPARTMENT or the ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE took steps to curtail UNDERCOVER OFFICER McMANUS' authority prior to February 2008.

58.    UNDERCOVER OFFICER McMANUS states that he heard UNDERCOVER OFFICER LEDESMA's radio transmissions as LEDESMA was

-16-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

following Mr. BALENTI for the alleged tinted windows as well as his transmission approximately one minute earlier alleging that Mr. BALENTI had rolled through a stop sign.

59. UNDERCOVER OFFICER McMANUS was, himself, traveling westbound on Ball Road, approximately one block east of Holder Avenue, as Mr. BALENTI was stopped at the intersection of Holder Avenue and Ball Road about to begin his right-hand turn, eastbound onto Ball Road.

60. There was *no* other radio transmission or other communication by any CITY OF ANAHEIM POLICE DEPARTMENT officer, or personnel or other any other agency which would have suggested to UNDERCOVER OFFICER McMANUS that the Nissan truck was being followed *for any alleged violations* other than:

- tinted windows; and
- allegedly rolling through a stop sign *one minute prior*.

61. Based upon these facts UNDERCOVER OFFICER McMANUS then *deliberately* crossed from the westbound lane of traffic and into oncoming eastbound traffic towards Mr. BALENTI.

62. Mr. BALENTI, who had just turned right onto Ball Road and was looking over his shoulder to safely merge out of the slow lane, was then impacted by UNDERCOVER OFFICER McMANUS, a few seconds into his turn.

63. The CITY OF BUENA PARK POLICE DEPARTMENT estimates the point of impact to have occurred 186 feet from the intersection where Mr. BALENTI had stopped before making his right hand turn.

64. Mr. BALENTI did not have the time or opportunity to see UNDERCOVER OFFICER McMANUS's undercover vehicle, prior to the impact.

65. UNDERCOVER OFFICER McMANUS claims:

-17-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

"I was fearful Balenti would now drive recklessly in heavy traffic in an attempt to allude [sic] the police and put the public at risk. There is more than one school in the area and it is common for many children to be out on foot at this time. Also, the major intersection he was driving towards…is always busy and heavily congested at this time of day."

66.    UNDERCOVER OFFICER McMANUS acknowledges, however, "I was aware there were marked police car's enroute to the area to assist."

67.    Nevertheless, UNDERCOVER OFFICER McMANUS states that he proceeded as follows:

"I drove westbound into the eastbound number one lane of Ball Road and stopped. I believed Balenti would either stop in front of me or go around me to continue to elude the investigators behind him. Due to the distance he was from me when he made his eastbound turn, he had the time and opportunity to do so."

68.    Although it is unclear what pursuit technique he intended to be performing, it appears that UNDERCOVER OFFICER McMANUS may be trying to depict a pursuit management technique commonly referred to as a "stationary road block," a technique which is nevertheless reserved for pursuit of a suspect who has presented himself as a lethal threat.

69.    The physical evidence and eyewitness statements demonstrate that UNDERCOVER OFFICER McMANUS was, however, not employing a "stationary road block" but rather the technique commonly referred to as "ramming," which, as described herein below, is regarded as highly dangerous to the community and reserved only for pursuing a suspect presenting the very highest level of lethal threat.

-18-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final  1-20.doc

70.    Mr. BALENTI had not engaged in any activity that would have presented him as a threat of any kind to the safety of himself, officers or the public.

71.    UNDERCOVER OFFICER McMANUS also claims that he activated red and blue flashing lights on his undercover vehicle as he did so and that he was wearing a police utility belt but was otherwise dressed in plain clothes.

72.    Mr. BALENTI had neither the time nor the opportunity to observe UNDERCOVER OFFICER McMANUS at all, let alone to observe any red and blue flashing lights or to observed what McMANUS was wearing.

73.    UNDERCOVER OFFICER McMANUS further claims that he had also observed UNDERCOVER OFFICER LEDESMA's car behind Mr. BALENTI's car as Mr. BALENTI was stopped at the intersection of Holder Avenue and Ball Road, before he negotiated his right hand turn – a claim which defies credulity given the physical layout and timing as described by the officers in their report.

74.    UNDERCOVER OFFICER McMANUS further claims,

"Balenti and I made eye contact as I stopped my vehicle.  Balenti suddenly accelerated his truck in my direction and violently collided with the front end of my vehicle."

75.    As such, this description contradicts that of UNDERCOVER OFFICER LEDESMA, who indicates that traffic continued to flow behind Mr. BALENTI, westbound on Ball Road after Mr. BALENTI made his right-hand turn and that LEDESMA had to wait for it to clear before following him, thus making it impossible for Mr. BALENTI to come to a stop as reported by UNDERCOVER OFFICER McMANUS – let alone engage in the dramatic faceoff he describes – without being rear-ended by other cars.

-19-

76.     As demonstrated by the physical evidence and the Declaration of the single non-party eye-witness to the accident (whose statements are misrepresented by the BUENA PARK POLICE DEPARTMENT, as described below), UNDERCOVER OFFICER McMANUS *was not stopped* prior to impact but rather impacted Mr. BALENTI's Nissan truck while careening across from the westbound to the eastbound lanes at a high rate of speed.

77.     As such, UNDERCOVER OFFICER McMANUS did not implement a "stationary road block" but rather implemented a pursuit management technique commonly referred to as "ramming."

78.     Plaintiff is informed and believes and, based thereon alleges, that a Traffic Collision Report dated February 12, 2008, was filed by the BUENA PARK POLICE DEPARTMENT and is on file with the City of BUENA PARK>

79.     In this Traffic Collision Report[2] BUENA PARK POLICE DEPARTMENT OFFICER TOM REYES concludes that Mr. BALENTI was at fault and that the accident was caused by his excessive speed.  OFFICER REYES further recommends that Mr. BALENTI's case be referred to the Orange County District Attorney's office for filing of charges against Mr. BALENTI for assault on a police officer.

80.     Measurements reported in the Traffic Collision Report confirm that this incident occurred 186 feet from the intersection of Holder Avenue and Ball Road, that Mr. BALENTI's Nissan truck was facing east in the eastbound lane and the Chevy Blazer driven by UNDERCOVER OFFICER McMANUS (although the damage indicates it was moved prior to the photographs) was facing west/south-west in the eastbound lane, towards oncoming traffic at the time of impact.

---

[2] All further references to claims made by CITY OF BUENA PARK POLICE OFFICERS shall refer to statements made in this Traffic Collision Report dated February 12, 2008.

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

81.   BUENA PARK POLICE OFFICER ROGER PLUMLEE states in his report in support of OFFICER REYES' conclusions that he interviewed a witness who told him he heard a car "braking heavily," a sound he describes as the sound of "the antilock brakes" coming on, and that, "He stated the vehicle *passed through his field of vision* and continued to brake heavy while *driving inside the painted divider*. [Witness] states that once the vehicle passed his field of view, it was approximately several seconds at which time he heard a loud crash. He stated he ran to the end of the street and saw the previously listed vehicle (Chevy SUV) had been involved in a traffic collision with a blue Nissan truck." (emphasis added.)

82.   However, following his incarceration; Mr. BALENTI retained attorneys who subsequently contacted the witness identified in OFFICER PLUMLEE's report regarding the incident. In or about May, 2010, Mr. BALENTI's attorneys learned that, contrary to statements attributed to him in OFFICER PLUMLEE's his report, the witness states that the Chevy SUV did not pass through his field of vision, but rather he had a "clear and unobstructed view" of the accident; that he did not observe UNDERCOVER OFFICER McMANUS "driving within the painted lines," but rather he observed McMANUS "skidding across the … lanes, into head on traffic" and that he was driving at an "extremely excessive speed" and "out of control" and, further, that he observed that, McMANUS' vehicle struck Mr. BALENTI's vehicle, which appeared to be traveling at a "low speed."

83.   Accordingly, the Traffic Collision Report misrepresents statements made by the witness to OFFICER PLUMLEE; and the only non-party eye witness to this accident corroborates Mr. BALENTI's account of the accident and refutes that put forth by UNDERCOVER OFFICER McMANUS.

-21-

84.     OFFICER PLUMLEE also states in his report that he interviewed CITY OF ANAHEIM POLICE UNDERCOVER OFFICER LEDESMA, and that he his account corroborates with that of UNDERCOVER OFFICER McMANUS

85.     The BUENA PARK POLICE DEPARTMENT took no photographs at the scene but rather relied solely upon photographs taken by UNDERCOVER OFFICER McMANUS' sergeant, ANAHEIM POLICE DEPARTMENT OFFICER FRIESEN, the sergeant assigned to this narcotics surveillance unit, and an ANAHEIM POLICE DEPARTMENT forensics specialist called to the scene...

86.     The damage to both vehicles evidence in the photographs reveals that the vehicles impacted one another head-on, causing damage to the front of Mr. BALENTI's truck from the driver's side, sparing a small portion of the passenger side; and causing damage to UNDERCOVER OFFICER McMANUS' SUV from the front passenger side, sparing the driver's side.

87.     The damage to the vehicles in relation to the placement of the vehicles as depicted in photographs taken by UNDERCOVER OFFICER FRIESEN reveal that the vehicles were rearranged following the accident and prior to the photographs to place UNDERCOVER OFFICER McMANUS' vehicle at an angle, facing the left driver's side corner/center of Mr. BALENTI's vehicle.

88.     No member of ANAHEIM POLICE DEPARTMENT took any photographs of the area that would have been behind UNDERCOVER OFFICER McMANUS' SUV at the original point of impact, in order to assess his rate of speed prior to the collision.

89.     Nevertheless, the placement of Mr. BALENTI's vehicle in the photographs demonstrates that, consistent with Mr. BALENTI's recollection, he was in the process of merging out of the slow lane at the time of impact.

90.     The collision caused all parties' air bags to deploy and forced the hood of Mr. BALENTI's Nissan truck up, covering the front window.

-22-

Complaint for Damages

91.    Both vehicles were equipped with data retrieval devices which would have recorded, among other things, the relative speed of each vehicle at the time of impact.

92.    THE BUENA PARK POLICE DEPARTMENT did not include in their traffic collision report any reference to data retrieved from such devices, nor any efforts to retrieve such data.

93.    Mr. BALENTI's attorneys have been unsuccessful in attempts to obtain this data and have been advised by Metro Tow, that they received UNDERCOVER OFFICER McMANUS' Blazer after the accident, but that the records with respect thereto are "sealed."

94.    Mr. BALENTI sustained a concussion, a dislocated right shoulder, cervical spine sprain and significant soft tissue injury and nerve damage as a result of this collision and was bleeding profusely and disoriented immediately following the collision.

95.    UNDERCOVER OFFICER SCOTT McMANUS sustained a cut to his right leg as well as several bruises and scratch and complains in his report that, following impact, he was "dazed" and he exited his vehicle on the driver's side and ordered Mr. BALENTI to put his hands in the air, then collapsed as a result of what he describes as "excruciating pain" suffered in the accident.

96.    UNDERCOVER OFFICER McMANUS states that Mr. BALENTI complied with the command to put his hands in the by placing his left hand on the side of his head.

97.    Mr. BALENTI was, in fact, unable to move his other arm due to his injuries.

98.    In the meantime, in his report filed after the incident, OFFICER LEDESMA, who had been following Mr. BALENTI, states that he stopped his car behind Mr. BALENTI, exited his vehicle, and opened the driver's side door of the Nissan truck.

-23-

99.   UNDERCOVER OFFICER LEDESMA states that, after attending to McMANUS, he then pulled Mr. BALENTI out of the truck by his left wrist while shouting "get out of the truck and lay on the ground."

100.   In fact, UNDERCOVER OFFICER LEDESMA pulled Mr. BALENTI (a 6' 230lb. man with apparent injuries) out of the truck in a violent manner, while shouting in a manner incoherent to Mr. BALENTI at the time.

101.   UNDERCOVER OFFICER LEDESMA reports that, once out of the truck, Mr. BALENTI did not get on the ground and that, accordingly, he then "took [Mr. BALENTI] to the ground with a leg sweep" causing Mr. BALENTI to fall to the street face first.

102.   UNDERCOVER OFFICER LEDESMA states that he then delivered "three knee strikes to [Mr. BALENTI's] shoulder and head area" because:

    a.   "his hands were underneath him and his body was rigid" as he fell to the ground following the leg sweep; and

    b.   Mr. BALENTI's actions during the "pursuit" (i.e., his alleged tinted windows and rolling through a stop sign) had led LEDESMA to fear he might have a weapon.

103.   In fact, UNDERCOVER OFFICER LEDESMA also delivered other kicks and strikes not reflected in his report.

104.   UNDERCOVER OFFICER LEDESMA was then joined by another man in street clothes, later identified as UNDERCOVER OFFICER KENNETH WEBER who states in his report that he then observed that Mr. BALENTI (who was at the time receiving "three knee strikes" to the shoulder and head area as reported by LEDESMA) was failing to put his hands behind his back and his "feet were flailing wildly and it appeared he was trying to push up off the ground and avoid being taken into custody."

105.   Based upon these observations, UNDERCOVER OFFICER KENNETH WEBER states in his reports that he proceeded as follows:

-24-

Complaint for Damages

1    "Fearing that S. Balenti was attempting to retrieve a weapon from his

2    waistband area, and for the safety of all officers present, I delivered two

3    closed fist strikes to the left side of his facial area in an attempt to gain

4    control of his hands.  Since his facial area was the only 0065posed area of

5    his body, I decided to deliver the strikes to this area believing this would

6    cause him to remove his hands from under his body in order to protect his

7    facial area, thus allowing Investigators to place him in handcuffs."

8        106.   UNDERCOVER OFFICER KENNETH WEBER notes that "the

9    strikes were effective."

10        107.   UNDERCOVER OFFICER KENNETH WEBER states that he then

11   placed his left knee on Mr. BALENTI's legs in order to "pin" him.

12        108.   In fact, UNDERCOVER OFFICER KENNETH WEBER also

13   delivered other kicks and strikes not reflected in his report.

14        109.   As stated in their reports, UNDERCOVER OFFICERS WEBER and

15   LEDESMA then placed Mr. BALENTI in handcuffs.

16        110.   In fact, UNDERCOVER OFFICERS WEBER AND LEDESMA

17   handcuffed Mr. BALENTI by forcefully pulling his arms behind his back, despite

18   the apparent injuries he had just suffered in the car accident, causing further

19   injury and pain to Mr. BALENTI.

20        111.   In the meantime, as stated in his report, UNDERCOVER OFFICER

21   McMANUS had by that point collapsed as a result of what he describes in his

22   report as "excruciating pain" suffered in the incident.

23        112.   Reports filed by members of the ANAHEIM POLICE

24   DEPARTMENT indicate that UNDERCOVER OFFICER McMANUS was

25   tended by fellow officers, treated at the scene by emergency responders and

26   transported to West Anaheim Medical Center.  As stated in said reports, while

27   there, he complained of pain in his right leg, left forearm, left wrist and noted that

28

-25-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

he was bleeding on his left hand. He was diagnosed by Dr. John Apthorpe with cuts and bruises and released.

113. By contrast, after sustaining significant injuries from (1) having his vehicle rammed by UNDERCOVER OFFICER McMANUS), (2) being violently pulled from the car by UNDERCOVER OFFICER LEDESMA, (3) being knocked to the street by UNDERCOVER OFFICER LEDESMA and (4) being beaten by UNDERCOVER OFFICERS LEDESMA and WEBER, Mr. BALENTI received no treatment at the scene.

114. Mr. BALENTI's truck was then searched and contraband retrieved from there and Mr. BALENTI was taken into custody.

115. Mr. BALENTI was then placed, handcuffed, in the back seat of a police car at the scene for an extended period of time which he cannot approximate due to his disorientation at the time.

116. During this time, he intermittently screamed in pain, requested medical attention, became disoriented, blacked out, experienced vertigo and slipped in and out of consciousness while blood ran from his head wounds, down his face, into his eyes and mouth. Mr. BALENTI's hands remained cuffed behind his back during this time.

117. All requests by Mr. BALENTI for help, medical treatment or relief, were denied by members of the ANAHEIM POLICE DEPARTMENT.

118. After an extended period of time (which Mr. BALENTI is unable to approximate), emergency responders from another (unknown) agency discovered Mr. BALENTI in the back of the police vehicle and offered him medical attention.

119. While sitting in the back of the police vehicle, Mr. BALENTI overheard a heated discussion between unknown individuals identifying themselves as ANAHEIM POLICE DEPARTMENT OFFICERS, who informed individuals who identified themselves as emergency responders that Mr.

-26-

BALENTI was to remain in the police car and would be transported to jail; and emergency responders stated, "You've done your job; now let us do ours."

120.   Eventually, the emergency responders prevailed and ANAHEIM POLICE DEPARTMENT OFFICERS allowed Mr. BALENTI to be taken out of their police vehicle, and transferred him into the custody of the emergency responders who transported him to Anaheim Medical Center.

121.   Photographs taken at Anaheim Medical Center show Mr. BALENTI lying on what appears to be a hospital gurney. His face is covered in dried blood; his ear is covered in blood and appears to be split; his head in wrapped bloody gauze and tape. His head is immobilized by a large styrofoam device; he is in a neck brace and a large blue strap under his chin appears to restrain his head to the gurney.   His legs are partially exposed and both legs have purple/red bruises and areas of swelling. He appears to be unconscious.

122.   BUENA PARK POLICE OFFICER TOM REYES claims in his Traffic Collision Investigation Report, that he was able to conduct an interview with Mr. BALENTI at Anaheim Medical Center at this time and that, in their conversation, Mr. BALENTI admitted (1) that he knew he was being followed by undercover police officers from the ANAHEIM POLICE DEPARTMENT; (2) that UNDERCOVER OFFICER McMANUS' vehicle was stopped when he first observed it; (3) that he observed UNDERCOVER OFFICER McMANUS' stopped vehicle "from the moment he made his right turn" and (4) that he made no attempt to swerve or try to stop. OFFICER REYES acknowledges that Mr. BALENTI was "in and out of alertness due to his injuries".

123.   BUENA PARK POLICE OFFICER TOM REYES states that "CSO [Community Support Officer] Seamaan and Officer Ungles" accompanied him on this interview of Mr. BALENTI.

-27-

124. In fact, Mr. BALENTI was unable to and did not answer any questions posed by OFFICER REYES at this time due to the severe nature his physical and emotional distress.

125. In his report, ANAHEIM POLICE DEPARTMENT UNDERCOVER OFFICER JAMES WEBER claims that he interviewed the female passenger in Mr. BALENTI's Nissan truck at the time of the accident and that her observations corroborate those which OFFICER REYES attributes to Mr. BALENTI in the hospital.

126. The ANAHEIM POLICE DEPARTMENT did not at any time provide a statement or declaration signed by the female passenger.

127. At the request of the ANAHEIM POLICE DEPARTMENT, the female passenger was treated at the scene by paramedics and released at the scene without being detained, questioned or charged regarding the illegal substances and materials allegedly found in Mr. BALENTI's vehicle.

128. Although she was a "friend of a friend" whom he had not previously met prior to the incident when she asked him for a ride, Mr. BALENTI was able to locate the female passenger and she emphatically denied having made any of the statements attributed to her by UNDERCOVER OFFICER JAMES WEBER. However, she stated that was reluctant to sign a statement to this effect for fear of retribution by the ANAHEIM POLICE DEPARTMENT or the BUENA PARK POLICE DEPARTMENT.

129. The ANAHEIM POLICE DEPARTMENT's report indicates that the female passenger was a "nonresident" of "Hispanic/latino/Mexican" ethnicity without a driver's license.

130. Mr. BALENTI's subsequent attempts to locate her on multiple occasions since then have been unsuccessful and the phone number listed for her in the report filed by OFFICER REYES triggers a recording which states that "the number or code you have dialed is incorrect."

-28-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

131.   OFFICER REYES also notes in his report that the BUENA PARK POLICE DEPARTMENT was charged with taking a collision report to document damage to the vehicles, at the request of the ANAHEIM POLICE DEPARTMENT. Pursuant to this authority, OFFICER REYES ordered the vehicles to be towed by Brookhurst Tow.

132.   Mr. BALENTI's efforts to obtain the records regarding tests performed on his truck and the SUV driven by UNDERCOVER OFFICER McMANUS have been unsuccessful. Mr. BALENTI believes these tests would demonstrate conclusively that McMANUS was not stopped at the time of the collision and that Mr. BALENTI was not traveling an excessive speed.

133.   The ORANGE COUNTY DISTRICT Attorney's office failed to file any charges against UNDERCOVER OFFICER McMANUS or any other police officer for the battery and assault of Mr. BALENTI or for any other offense arising out of this incident.

134.   Neither the ANAHEIM POLICE DEPARTMENT, the CITY OF ANAHEIM, the CITY OF ANAHEIM CHIEF OF POLICE, nor any other government agency took any disciplinary action of any kind against UNDERCOVER OFFICER McMANUS or any other police officer for their conduct in this incident.

135.   All reports filed by the ANAHEIM POLICE DEPARTMENT were reviewed and approved by SERGEANT CRAIG FRIESEN of the ANAHEIM POLICE DEPARTMENT.

136.   The Traffic Collision Report filed by the BUENA PARK POLICE DEPARTMENT was reviewed and approved by one "Sgt. F. Nunes," who plaintiff believes to be BUENA PARK POLICE OFFICER FRANK NUNES.

137.   The APD, through its spokesperson Sgt. Rick Martinez is quoted as follows in the Orange County Register published online and in print on February

-29-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

4, 2008 in connection with this incident as saying that Mr. BALENTI was "trying to drive away from the officer" at the time of the collision.

138.  Sgt. Martinez is quoted in that article as saying,

"He apparently sensed someone was following him."

139.  Sgt. Rick Martinez also represents in that article:

a.  that as the pickup sped up, the undercover officer in a tan Chevrolet Tahoe driving the opposite direction on Ball collided with the pickup;

b.  that Mr. BALENTI, whom he identifies by name, was injured by an undercover officer in an SUV which "collided with" his truck;

c.  that Mr. BALENTI was arrested on suspicion of "assault with a deadly weapon" and drug related charges;

d.  that Mr. BALENTI, who was "wanted in connection with the" undercover narcotics investigation "drove off";

e.  that before the marked units could get there, [BALENTI] sped up.

140.  Plaintiff is informed and believes based thereon alleges that the APD published press releases, or other reports intended for public consumption, consist with the above representations and statements.

141.  The representations made by the APD orally and in print are false and misleading, cast Mr. BALENTI in a false and negative light on an issue of vital public interest.

142.  Mr. BALENTI has suffered embarrassment, shame, indignity and anxiety as a result of this characterization of him.

143.  In a felony complaint filed March 13, 2008, the ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS (hereinafter RACKAUCKAS) filed charges against Mr. BALENTI under California Penal Code Section 245(c) for aggravated assault on a firefighter or police officer for his alleged assault on UNDERCOVER OFFICER McMANUS, "a peace officer

-30-

Complaint for Damages

1   engaged in the performance of [his] duty" as well as for possession of various

2   illegal substances and materials discovered in his vehicle after the accident.

3       144.   RACKAUCKAS assumed an investigative role in this matter as

4   mandated by ORANGE COUNTY DISTRICT ATTORNEY internal policies and

5   procedures and in so doing disregarded and failed to uncover and pursue all

6   relevant evidence relating to these charges and the facts relating to the

7   prospective filing of assault charges reprimands against UNDERCOVER

8   OFFICER McMANUS for his conduct in this and prior similar matters.

9       145.   RACKAUCKAS, conspired to and did and did direct others to

10  disregard, omit, misrepresent and mischaracterize facts, evidence and witness

11  testimony in this investigation.

12      146.   Mr. BALENTI was precluded from filing this claim premised upon

13  allegations of excessive force under California Government Code Section 945.3

14  while the aggravated assault charges filed by RACKAUCKAS were pending; and

15  any applicable statute of limitations respecting this claim was thereby tolled by

16  this statute until and unless said charges were dismissed or resolved in Mr.

17  BALENTI's favor.

18      147.   Defendants and each of them conspired to, knew of and did omit

19  exculpatory evidence and testimony and ignored and failed to consider

20  exculpatory evidence, including but not limited to the relevant physical and

21  computer data

22      148.   On June 5, 2009, RACKAUCKAS dismissed the charges under

23  Penal Code Section 245(c) against plaintiff for aggravated assault on a police

24  officer.

25      149.   The charge of aggravated assault was known to and condoned by

26  OFFICER DEFENDANTS AND SUPERVISING DEFENDANTS in bad faith

27  and with malicious intent for the purpose of conspiring to and depriving Mr.

28  BALENTI of his constitutional rights by using this charge and the threat of

-31-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

incarceration associated therewith to coerce Mr. BALENTI to plead guilty to other charges and to harass, humiliate, damage, injure and harm Mr. BALENTI.

150.   On June 5, 2009, Mr. BALENTI plead guilty to charges relating to illegal substances and materials allegedly found in his car; and from June 5, 2009 to January 7, 2010, Mr. BALENTI was incarcerated for these offenses, thus further tolling the statute of limitations applicable to this action for this period of incarceration pursuant to Government Code Section 945.3.

151.   The Defendants conspired to and did file the assault charges under California Penal Code Section 245(c) in bad faith, in order to deprive Mr. BALENTI of his right to fair process and access to the courts, and to obtain leverage in negotiating a plea agreement with Mr. BALENTI in their prosecution of the other criminal charges to which Mr. BALENTI ultimately pled guilty and was incarcerated for.

152.   Mr. BALENTI suffered not only the loss of his due process rights and access to the courts as a result of this scheme, but injuries as a result of his incarceration, including exacerbation of physical injuries and damage sustained at the time of the events described herein, depression, anxiety, shame and humiliation in being denied the comfort of his family and friends at the time of his father's death which occurred while Mr. BALENTI was incarcerated.

153.   Plaintiff is informed and believe and based thereon alleges that each and every SUPERVISING DEFENDANT knew of and, by their action and their inaction, and ratified and promoted the practices of the OFFICER DEFENDANT described herein.

154.   Defendants' actions as described herein constitute reprehensible conduct, oppression, fraud and/or malice, which have caused plaintiff the physical, emotional, property and financial injuries and damages described herein.

///

-32-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

## INJURIES

As a direct and proximate result of the actions of Defendants and each of them, Plaintiff suffered the following injuries, including but not limited to physical injury and mental suffering, humiliation from publicity, shock and fear from removal from surroundings, indignity, loss of liberty, and loss of income, including future income.

## FIRST CLAIM FOR RELIEF

## VIOLATIONS OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS UNDER 42 U.S.C. §1983, 1985, 1986 AND 1988 FOR VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION

### (Against All Defendants)

155.   Plaintiff repeats, re-alleges and incorporates each and every allegation of each and every paragraph above as though fully set forth herein. Plaintiff is informed and believe and thereon allege that:

156.   Defendants and each of them had and have a legal duty to protect and serve the public.

157.   In committing the acts complained of herein, Defendants breached this duty by acting under color of law to deprive Plaintiff of certain constitutionally protected rights under the Fourth, and Fourteenth Amendments to the Constitution of the United States including, but not limited to:  a) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of access to the courts without due process of law; d) the right to be free from excessive use of force by persons acting under color of state law; e) the right to privacy.

158.   In committing the acts described herein and such acts as will be proven at trial. Defendants deprived Plaintiff of these rights in violation of

-33-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

159.   As a direct and proximate result of the violation of their constitutional rights by the Defendants, Plaintiff suffered damages and injury as alleged in this Complaint and is entitled to relief under 42 U.S.C.  §1983, 1985, 1986 and 1988.

160.   The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF
## SUPERVISORIAL RESPONSIBILITY FOR VIOLATIONS FOR THE FOURTH AND FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFF
### (Against All Defendants)

161.   Plaintiff repeats, re-alleges and incorporates each and every allegation of each and every paragraph above as though fully set forth herein. Plaintiff is informed and believe and thereon allege that:

162.   Plaintiff possessed the right, guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, to be free from the use of excessive force.

163.   This action is brought pursuant to 42 U.S.C. §1983, 1985, 1986 and 1988 for violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution.

164.   On the date of the shooting, SUPERVISING DEFENDANTS were charged with supervisory authority over each and every OFFICER DEFENDANT present at the time and location of the incident and SUPERVISING DEFENDANTS were present at the scene either physically or by virtue of this authority.

-34-

Complaint for Damages

165.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, participated in, encouraged, condoned and ratified the conduct of each and every OFFICER DEFENDANT described herein.

166.   SUPERVISING DEFENDANTS, charged with supervisory responsibility learned of and became aware of the subject incident and conducted an investigation by personally evaluating the evidence of the incident and were aware of the customs, practices, and propensities of their subordinate officers defendants involved in the use of excessive force in violation of P.C. §118.1 among other wrong acts.  Notwithstanding this, SUPERVISING DEFENDANTS tolerated, encouraged and condoned this misconduct by consciously ignoring, turning a blind eye to, overlooking and instituting a policy of action and inaction intended to promulgate and encourage the misconduct.

167.   Notwithstanding this knowledge, said SUPERVISING DEFENDANTS encouraged and facilitated such conduct and deliberately and leniently overlooked and ratified the misconduct of ANAHEIM POLICE DEPARTMENT OFFICER SCOTT McMANUS and of each and every Officer Defendant by failing to discipline said officers, approving false and misleading police reports authored by said officers, and failing to recommend the investigation and criminal prosecution of said officers for the misconduct, and in the present instance failing to supervise and control said defendants, so as to prevent the misconduct alleged herein and by failing to train said subordinate officers in the procedures, laws and practices that would eliminate the risk of the constitutional violations alleged herein.

168.   By consciously and deliberately overlooking the acts of misconduct and criminal acts by their subordinate officers in this and prior incidents of this nature, SUPERVISING DEFENDANTS established a custom and practice of condoning and ratifying such misconduct and criminal activity, and established and tolerated a pattern of constitutional violations to which they were indifferent

-35-

amongst their subordinate officers. This condoning of misconduct was so comprehensive and well known that ANAHEIM POLICE OFFICER SCOTT McMANUS and other subordinate officers were emboldened to blatantly violate the constitutional rights of any persons the subordinate officers came into contact with while on duty and to commit crimes and/or wrongdoing such as the above-mentioned acts and omissions with impunity.

169.   Through their conscious disregard for the rights of the persons ANAHEIM POLICE OFFICER SCOTT McMANUS and other subordinates would come in contact with and through their custom and practice of encouraging, condoning, tolerating and ratifying constitutional violations and criminal activity by ANAHEIM POLICE OFFICER SCOTT McMANUS and other subordinates, SUPERVISING DEFENDANTS were deliberately indifferent to the constitutional violations being committed by their subordinates and charged with the knowledge that such constitutional violations would likely be committed in the future by ANAHEIM POLICE OFFICER SCOTT McMANUS and other OFFICER DEFENDANTS.

170.   Based on the presence at and evaluation of the evidence of the incident which underlies this lawsuit and based on the on-site investigation conducted by SUPERVISING DEFENDANTS as described above, and based on their knowledge of the prior misconduct of ANAHEIM POLICE OFFICER SCOTT McMANUS and other officers involved in the incident, said defendants concluded that the incidents described herein as well as past similar incidents were unjustified, that a conspiracy was in place and continuing between the police officers involved in the incident to conceal the wrongfulness of their conduct and of the shooting, and that discipline and criminal prosecution of the officers was called for. Notwithstanding this information and their conclusions, said defendants ratified, condoned, approved and turned a blind eye to the misconduct of ANAHEIM POLICE OFFICER SCOTT McMANUS and other OFFICER

-36-

DEFENDANTS, failing to discipline said officers and failing to recommend the investigation and criminal prosecution of said officers.

171.   Because of their presence on the scene of the constitutional violations alleged herein and because of the failure to act to prevent the continuing constitutional violations by their subordinates, and because of the establishment of the policies and practices described above as well as their failure to adequately train their subordinates, SUPERVISING DEFENDANTS are liable for the constitutional violations committed by OFFICER DEFENDANTS and for the injuries to Plaintiff as described herein.

172.   The aforementioned acts of SUPERVISING DEFENDANTS were willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary and punitive damages as to these defendants.

173.   SUPERVISING DEFENDANTS are liable through application of *respondeat superior* pursuant to section 815.2 of the California Government Code for the acts of its employees named herein who at all times alleged herein were acting in the course and scope of their employment with said public entity.

174.   As a direct and proximate result of the actions of Defendants, Plaintiffs suffered the following injuries, including but not limited to physical injury and emotional distress, mental suffering, humiliation, shock and fear from removal from surroundings, indignity, loss of liberty, loss of income, including future income.

**THIRD CLAIM FOR RELIEF**

**MUNICIPAL LIABILITY FOR VIOLATION OF**

**CONSTITUTIONAL RIGHTS**

**(Against All Defendants)**

175.   Plaintiff repeats, re-alleges and incorporates each and every allegation of each and every paragraph above as though fully set forth herein. Plaintiff is informed and believe and thereon allege that:

-37-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

176.   Plaintiff possessed the right, guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, to liberty, freedom from excessive force as well as the right to due process and access to the courts and other rights and the right to reasonable medical attention, among other rights.

177.   On said date, OFFICER DEFENDANTS, and each of them, acting within the course and scope of their duties as peace officers of the APD and BPPD deprived Plaintiff of these rights, when said defendants unreasonably and without justification caused the injury and damages to Plaintiff as described herein.

7.   At the time of these constitutional violations SUPERVISING DEFENDANTS had in place, and had ratified policies, procedures, customs and practices which permitted and encouraged their police officers to unjustifiably, unreasonably and in violation of the Fourth and Fourteenth Amendments use excessive force and to systematically fabricate, mischaracterize and withhold evidence for the purpose of securing a conviction on other charges and/or otherwise deny Plaintiff access to the courts.

178.   Said policies, procedures, customs and practices also called for SUPERVISING DEFENDANTS not to discipline, prosecute, or objectively and/or independently investigate or in any way deal with or respond to known incidents, complaints of excessive force, wrongful shootings of such persons, conduct by OFFICER DEFENDANTS to fail to objectively and/or independently investigate or in any way properly deal with or respond to claims and lawsuits made as a result of such misconduct.

179.   Said policies, procedures, customs and practices called for and led to the refusal of said defendants to properly investigate complaints of previous incidents of excessive force and instead, officially claim that such incidents were justified and proper.

-38-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final  1-20.doc

180.   Said policies, procedure customs an practices called for said defendants, and each of them, by means of inaction, cover-up, and deliberate indifference to encourage an atmosphere of lawlessness within the police department and to encourage their police officers to believe that excessive force against suspects was permissible, to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications and to otherwise deny suspects their constitutional right to access to the courts.

181.   Said policies, procedures, customs and practices evidenced a deliberate indifference to the violations of the constitutional rights of the Plaintiff. This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs and practices in light of prior knowledge by said defendants of similar incidents.

182.   Deliberate indifference to the civil rights was also evidenced by defendants' failure to train or retain officers in proper, safe and constitutional requirements regarding the provision of medical services to suspects.  Said defendants knew and were aware of the customs and practice of permitting suspects to incur injuries from beating, excessive force and lack of medical care.

183.   Deliberate indifference to the civil rights was also evidenced by said defendants by their ignoring of the history and pattern of prior civil lawsuits alleging civil rights violations and the related payment of judgments to suspects and/or the families of suspects arising out of the conduct of UNDERCOVER OFFICER McMANUS, other OFFICER DEFENDANTS and/or DOES defendants.

184.   Deliberate indifference is also evidenced by maintenance of an inadequate system of use-of-force tracking, government claim/lawsuit tracking, and an independent system of officer discipline and independent and objective investigation by SUPERVISING DEFENDANTS which failed to identify and

-39-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final  1-20.doc

investigate instances of excessive force against suspects, as well as routine traffic
incidents involving OFFICER DEFENDANTS, improper use of undercover
vehicles, falsification of evidence, submission of false or misleading police
reports and perjury, and by the failure of said defendants to adequately train and
more closely supervise or retain officers and/or discipline or recommend
prosecution of those officers who if fact improperly used excessive force against
suspects.

185.   Based on information and belief other systemic deficiencies of said
defendants which indicated and continue to indicate, a deliberate indifference to
the violations of the civil rights by SUPERVISING DEFENDANTS include:

    a.  preparation of investigative reports designated to vindicate the
       use of force and firearms against suspects regardless of whether
       such use was justified;

    b.  preparation of investigative reports which uncritically rely solely
       on the word of OFFICER DEFENDANTS involved in the or use
       of force incidents and which systematically fail to credit
       testimony by non-officer witnesses;

    c.  preparation of investigative reports which omit factual
       information and physical evidence which contradicts the accounts
       of the officers involved;

    d.  issuance of public statements exonerating officers involved in
       such incidents prior to he completion of investigations of the use
       of force and/or which implicate and draw unsupported inferences
       against Plaintiff;

    e.  failure to objectively and independently review investigative
       reports by responsible superior officers for accuracy or
       completeness and acceptance of conclusions which are

-40-

1    unwarranted by the evidence of the shooting or use of force or

2    which contradicts such evidence; and,

3    f.  failure to maintain integrity of a potential crime or accident scene

4    by measures but which include but are not limited to the

5    deliberate rearrangement of vehicles and evidence following

6    traffic collisions, including but not limited to those involving

7    OFFICER DEFENDANTS;

8    g.  failure to make use of all available sources of investigatory data,

9    including but not limited to post crash data retrieval equipment

10   and basic accident reconstruction;

11   h.  failure to maintain centralized department-wide systems for the

12   tracking and monitoring of the use of excessive force, citizens'

13   complaints, government tort claims, abuse of authority, and race-

14   based misconduct by individual officers so as to identify those

15   officers who engage in a pattern of excessive force, abuse of

16   police authority and police misconduct.

17   186.   Said defendants also maintained a system of grossly inadequate

18   training regarding the use of force and regarding the training for police testimony

19   in trial as well as the collection of evidence, investigation of incidents and the

20   preparation of police reports.

21   187.   Deliberate indifference to the civil rights of suspects and other

22   victims of the APD and BPPD's excess force and officer-involved excessive force

23   was also evidenced by said SUPERVISING DEFENDANTS' failure to

24   implement an officer discipline system which would conduct meaningful and

25   independent investigations of alleged excessive force by officers and of citizen

26   complaints.

27   188.   Deliberate indifference to the civil rights of members of victims of

28   the APD and BPPD'S excessive force was also evidenced by said defendants'

-41-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final  1-20.doc

implementing a practice and custom with the APD and BPPD of permitting officers to engage in unlawful activities while on duty, including, but not limited to the herein mentioned acts and/or omissions along with other crimes of moral turpitude.

189.   The foregoing acts, omissions, and systemic deficiencies are policies and customs of SUPERVISING DEFENDANTS to be unaware of, or intentionally overlook and ignore, the rules and laws governing the permissible use of force, including the use of force against suspects.  The foregoing acts, omissions, and systemic deficiencies are policies and customs of said defendants and such caused, permitted and/or allowed under official sanction ANAHEIM POLICE OFFICER SCOTT McMANUS and other OFFICER DEFENDANTS to believe that their use of police force against suspects is entirely within the discretion of the officer and that improper and unlawful activity, including the use of excessive force, would not be objectively, thoroughly and/or properly investigated, all with the foreseeable result that said OFFICER DEFENDANTS would use deadly force in situations where such force is neither necessary, reasonable nor legal, and falsify evidence, submit false and misleading police reports, fail to properly investigate and commit perjury, and thereby violate the civil rights of the citizens of this state with whom said officers would come into contact.

190.   As a result of the aforementioned acts, omissions, systematic deficiencies, policies, procedures, customs and practices of said defendants, Mr. BALENTI was unlawfully rammed by ANAHEIM POLICE OFFICER SCOTT McMANUS in his undercover vehicle and beaten by ANAHEIM POLICE OFFICERS RONALD LEDESMA and KENNETH WEBER, under the direction and supervision of SUPERVISING DEFENDANTS, which facts were deliberately concealed, ignored and misstated in an effort to protect defendants and to injure plaintiff and deprive him of his constitutional rights.

-42-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final  1-20.doc

191.   As a direct and proximate result of the aforementioned act alleged herein, Mr. BALENTI suffered serious injuries, and/or was denied prompt and necessary medical attention, all of which caused him and continue to cause him physical and emotional pain and loss of property and loss of income.

192.   SUPERVISING DEFENDANTS are liable through application of *respondeat* superior pursuant to section 815.2 of the California Government Code for the acts of its employees named herein who at all times alleged herein were acting in the course and scope of their employment with said public entity.

193.   As a direct and proximate result of the actions of Defendants, Plaintiffs suffered the damages and injury alleged in this complaint.

194.   The aforementioned acts of defendants and each of them were willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary and punitive damages as to each and every defendant herein.

**FOURTH CLAIM FOR RELIEF**

**CONSPIRACY TO VIOLATE CIVIL RIGHTS**

**42 U.S.C. SECTIONS 1985(2), 1985(3) AND 1986**

**(Against All Defendants)**

195.   PLAINTIFFS repeat, re-allege and incorporate each and every allegation of each and every paragraph above as though fully set forth herein. Plaintiffs are informed and believes and thereon alleges the following:

196.   SUPERVISING DEFENDANTS and OFFICER DEFENDANT and each of them, conspired together and agreed to act in concert to commit an act for the purpose of impeding, hindering, obstructing, and defeating the due course of justice in the State of California and the County of Orange and to violate Plaintiff's constitutional rights as described herein.

197.   Said defendants, and each of them, knew the plan along with other co-conspirators purposefully, under color of law, planned and intended to deny his constitutional rights and injure plaintiff.

-43-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

198.   As a result of this conspiracy plaintiff's Fourth and Fourteenth Amendments rights of the United States Constitution as guaranteed at 42 U.S. C. 1983, 1985, 1986 and 1988 were violated.

199.   As a result of this conspiracy Plaintiff was injured and damaged as alleged herein.

### FIFTH CLAIM FOR RELIEF
### ASSAULT AND BATTERY AND CONSPIRACY
### TO ASSAULT AND BATTER
### (Against Defendants McMANUS, LEDESMA and KENNETH WEBER)

200.   PLAINTIFFS repeat, re-allege and incorporate each and every allegation of each and every paragraph above as though fully set forth herein.

201.   Said PLAINTIFFS invoke the supplemental jurisdiction of this Court to hear and determine this claim.

202.   On the date of the incident, ANAHEIM POLICE OFFICER SCOTT McMANUS, without just or legal cause, assaulted Plaintiff by ramming his vehicle into Plaintiff's vehicle.

203.   On the date of this incident, ANAHEIM POLICE OFFICERS RONALD and KENNETH WEBBER, without just or legal cause, kicked, punched, kneed and otherwise assaulted, battered and attacked Plaintiff without just or legal cause.

204.   Said assaults and battery upon Plaintiff was not consented to by Plaintiff.

205.   Said assaults and battery were intended as a result of the hatred, aggression and anger of ANAHEIM POLICE OFFICERS SCOTT McMANUS, RONALD LEDESMA and KENNETH WEBER with the intent to injure, kill, harass, and separate and apart from any actions taken in their official capacities as police officers duty bound to protect and serve the public.

-44-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

206.   Furthermore, Plaintiff could not have known nor would he have known in the exercise of reasonable care that ANAHEIM POLICE OFFICER SCOTT McMANUS and other OFFICER DEFENDANTS in undercover vehicles wanted to signal to him either that they were police officers or that they wanted him to stop.

207.   As a direct and proximate result of this assault and battery and conspiracy to assault and battery Mr. BALENTI, Plaintiff suffered the damages and injuries described herein.

208.   Said harmful and offensive contact was intentionally committed by said individual defendants, and each of them, and was willful, wanton, malicious and oppressive thereby justifying the awarding of exemplary and punitive damages as to said individual defendants.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENCE and NEGLIGENT SUPERVISION
### (Against All Defendants)

209.   Plaintiff incorporates by reference the allegations above as though fully set forth at length.

210.   Defendants, and each of them, had a legal duty to exercise due care and diligence.

211.   Defendants and each of them, acting in their individual capacities breached these duties through their conduct, resulting in Plaintiff's harm, injury and damage as described herein.

212.   Plaintiff also seeks punitive damages against the individual Defendants in their individual capacities inasmuch as the actions of defendants, and each of them, provides clear and convincing evidence of reprehensible conduct, oppression, fraud and/or malice, and that plaintiff suffered the physical, emotional, property and financial injuries and damages described herein.

///

-45-

Complaint for Damages

C:\Users\Jack\Documents\CECILIA\BALENTI\balenti.final 1-20.doc

## **PRAYER**

Wherefore, the Plaintiff BOAZ Q. BALENTI for each and every claim for relief above demands the following relief, jointly and severally, against all the defendants;

      a. Compensatory general and special damages in an amount in accordance with proof;

      b. Exemplary and/or punitive damages, against each and every individual defendant only for the intentional acts described herein and/or for those intentional acts done recklessly and/or with deliberate indifference, in an amount sufficient to deter and to make an example of those individual defendants.

      c. Reasonable attorneys' fees and expenses of litigation, including those fees permitted by 42 U.S.C. § 1988; Attorney fees Awards Act of 1976, and 42 USC section 1983.

      d. Costs of suit necessarily incurred herein;

      e. Prejudgment interest according to proof;

      f. Punitive damages against each and every individual Defendant only as allowed by law, in an amount sufficient to punish and deter such future conduct;

      g. As a direct and proximate result of the actions of Defendants, Plaintiffs suffered the following injuries, including but not limited to:

          (i) Physical injury, past, present and future, including a concussion, a dislocated right shoulder, cervical spine sprain and significant soft tissue injury, vertigo and nerve damage sustained as a result of events, which occurred at the time of the accident and beating, and exacerbated as a result of Plaintiff's incarceration.

-46-

(ii) Emotional injury, past, present and future, including depression, anxiety, humiliation and distress sustained as a result of events, which occurred at the time of the accident and beating, and exacerbated as a result of Plaintiff's incarceration.

(iii) Loss of income, past, present and future as a result of these injuries.

h.  Such other and further relief as the Court deems just and proper.

Dated:  July 29, 2010            Respectfully submitted,

KENEALY LAW OFFICES

By: _____

Cecilia Balenti-Moddelmog,
Attorneys for Plaintiff

-47-

Complaint for Damages

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself □)<br>BOAZ Q. BALENTI, | **DEFENDANTS**<br>See attached schedule A |

| | |
|---|---|
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>KENEALY LAW OFFICES 327 College Street, Suite 103<br>Woodland, California 95695 Ph: 530-669-7736 | Attorneys (If Known)<br>Jack Kenealy, SBN 76987<br>Cecilia Balenti-Moddelmog, SBN 137506 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff　☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant　☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding　☐ 2 Removed from State Court　☐ 3 Remanded from Appellate Court　☐ 4 Reinstated or Reopened　☐ 5 Transferred from another district (specify):　☐ 6 Multi-District Litigation　☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes　☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes　☒ No　☐ **MONEY DEMANDED IN COMPLAINT:** $ 20,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 USC § 1983 Violation of 4th and 14th amendment rights as well as supplemental state laws arising out of excessive force.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| | | | | | |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | | ☐ 210 Land Condemnation | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | | |
| ☐ 895 Freedom of Info. Act | | ☐ 230 Rent Lease & Ejectment | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | | ☐ 240 Torts to Land | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | | ☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | | | |

Additional Personal Property entries:
☐ 441 Voting
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions
☒ 440 Other Civil Rights

**FOR OFFICE USE ONLY:** Case Number: _____ **SACV10-01159**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
    ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information. use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Orange | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Orange | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Orange | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date  July 29, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

SCHEDULE A

KENEALY LAW OFFICES
Jack Kenealy, SBN 76987
Cecilia Balenti-Moddelmog, SBN 137506
327 College Street, Suite 110
Woodland, California 95695
Telephone: (530) 669-7736
Facsimile: (530) 669-3615
kenealylaw@ymail.com
Attorneys for Plaintiff, BOAZ Q. BALENTI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOAZ Q. BALENTI,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF ANAHEIM POLICE OFFICER SCOTT McMANUS (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER RONALD LEDESMA (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER CRAIG FRIESEN (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER KENNETH WEBER (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF ANAHEIM POLICE OFFICER JAMES WEBER (IN HIS OFFICIAL AND PERSONAL CAPACITIES); UNIDENTIFIED CITY OF ANAHEIM POLICE OFFICERS DOES 1-10; CITY OF ANAHEIM; CITY OF ANAHEIM POLICE DEPARTMENT; CITY OF ANAHEIM CHIEF OF POLICE    JOHN WELSTER; CITY OF BUENA PARK POLICE OFFICER THOMAS REYES (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF BUENA PARK POLICE OFFICER ROGER PLUMLEE (IN HIS OFFICIAL AND PERSONAL CAPACITIES); CITY OF BUENA PARK POLICE OFFICER FRANK NUNES (IN HIS OFFICIAL AND PERSONAL CAPACITIES; AND UNIDENTIFIED CITY OF BUENA PARK POLICE OFFICERS DOES 10-20; CITY OF BUENA PARK; CITY OF BUENA PARK POLICE DEPT; BUENA PARK POLICE CHIEF TOM MONSON; COUNTY OF ORANGE; ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS (IN HIS OFFICIAL AND PERSONAL CAPACITIES); and unidentified administrative agencies DOES 20 through 30, inclusive,<br><br>        Defendants. | **CASE NO:**<br><br><br>**COMPLAINT FOR DAMAGES; CIVIL RIGHTS VIOLATIONS (42 USC § 1983, 1984 1986 and 1988) AND SUPPLEMENTAL STATE LAW CLAIMS**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1159 CJC (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.


All discovery related motions should be noticed on the calendar of the Magistrate Judge


=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |


Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
KENEALY LAW OFFICES
Cecilia Balenti-Moddelmog, SBN 137506
327 College Street, Suite 103
Woodland, California 95695

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| BOAZ Q. BALENTI | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | SACV10-01159 **CJC** MLGx |
| v. | |
| See attached schedule A | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S): See attached Schedule B

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Cecilia Balenti-Moddelmog_____, whose address is 327 College Street, Suite 103 Woodland, California 95695_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____ AUG - 2 2010 _____

By: _____ CHRISTOPHER POWERS

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

113M304946101 NF 7/30/2010 12:24:58 PM

SCHEDULE A

KENEALY LAW OFFICES
Jack Kenealy, SBN 76987
Cecilia Balenti-Moddelmog, SBN 137506
327 College Street, Suite 110
Woodland, California 95695
Telephone: (530) 669-7736
Facsimile: (530) 669-3615
kenealylaw@ymail.com
Attorneys for Plaintiff, BOAZ Q. BALENTI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOAZ Q. BALENTI, ) | CASE NO: |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT FOR DAMAGES;** |
| vs. ) | **CIVIL RIGHTS VIOLATIONS** |
| ) | **(42 USC § 1983, 1984 1986 and 1988) AND** |
| CITY OF ANAHEIM POLICE OFFICER SCOTT ) | **SUPPLEMENTAL STATE** |
| McMANUS (IN HIS OFFICIAL AND PERSONAL ) | **LAW CLAIMS** |
| CAPACITIES); CITY OF ANAHEIM POLICE ) | |
| OFFICER RONALD LEDESMA (IN HIS OFFICIAL ) | |
| AND PERSONAL CAPACITIES); CITY OF ) | **[DEMAND FOR JURY TRIAL]** |
| ANAHEIM POLICE OFFICER CRAIG FRIESEN (IN ) | |
| HIS OFFICIAL AND PERSONAL CAPACITIES); ) | |
| CITY OF ANAHEIM POLICE OFFICER KENNETH ) | |
| WEBER (IN HIS OFFICIAL AND PERSONAL ) | |
| CAPACITIES); CITY OF ANAHEIM POLICE ) | |
| OFFICER JAMES WEBER (IN HIS OFFICIAL AND ) | |
| PERSONAL CAPACITIES); UNIDENTIFIED CITY ) | |
| OF ANAHEIM POLICE OFFICERS DOES 1-10; CITY ) | |
| OF ANAHEIM; CITY OF ANAHEIM POLICE ) | |
| DEPARTMENT; CITY OF ANAHEIM CHIEF OF ) | |
| POLICE       JOHN WELSTER; CITY OF BUENA ) | |
| PARK POLICE OFFICER THOMAS REYES (IN HIS ) | |
| OFFICIAL AND PERSONAL CAPACITIES); CITY ) | |
| OF BUENA PARK POLICE OFFICER ROGER ) | |
| PLUMLEE (IN HIS OFFICIAL AND PERSONAL ) | |
| CAPACITIES); CITY OF BUENA PARK POLICE ) | |
| OFFICER FRANK NUNES (IN HIS OFFICIAL AND ) | |
| PERSONAL CAPACITIES); AND UNIDENTIFIED ) | |
| CITY OF BUENA PARK POLICE OFFICERS DOES ) | |
| 10-20; CITY OF BUENA PARK; CITY OF BUENA ) | |
| PARK POLICE DEPT; BUENA PARK POLICE ) | |
| CHIEF TOM MONSON; COUNTY OF ORANGE; ) | |
| ORANGE COUNTY DISTRICT ATTORNEY TONY ) | |
| RACKAUCKAS (IN HIS OFFICIAL AND ) | |
| PERSONAL CAPACITIES); and unidentified ) | |
| administrative agencies DOES 20 through 30, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

SCHEDULE B

CITY OF ANAHEIM POLICE OFFICER SCOTT          )          CASE NO:
McMANUS (IN HIS OFFICIAL AND PERSONAL         )
CAPACITIES); CITY OF ANAHEIM POLICE           )
OFFICER RONALD LEDESMA (IN HIS OFFICIAL       )          COMPLAINT FOR DAMAGES;
AND PERSONAL CAPACITIES); CITY OF             )          CIVIL RIGHTS VIOLATIONS
ANAHEIM POLICE OFFICER CRAIG FRIESEN (IN      )          (42 USC § 1983, 1984 1986 and 1988) AND
HIS OFFICIAL AND PERSONAL CAPACITIES);        )          SUPPLEMENTAL STATE
CITY OF ANAHEIM POLICE OFFICER KENNETH        )          LAW CLAIMS
WEBER (IN HIS OFFICIAL AND PERSONAL           )
CAPACITIES); CITY OF ANAHEIM POLICE           )
OFFICER JAMES WEBER (IN HIS OFFICIAL AND      )          [DEMAND FOR JURY TRIAL]
PERSONAL CAPACITIES); UNIDENTIFIED CITY       )
OF ANAHEIM POLICE OFFICERS DOES 1-10; CITY    )
OF ANAHEIM; CITY OF ANAHEIM POLICE            )
DEPARTMENT; CITY OF ANAHEIM CHIEF OF          )
POLICE          JOHN WELSTER; CITY OF BUENA    )
PARK POLICE OFFICER THOMAS REYES (IN HIS      )
OFFICIAL AND PERSONAL CAPACITIES); CITY       )
OF BUENA PARK POLICE OFFICER ROGER            )
PLUMLEE (IN HIS OFFICIAL AND PERSONAL         )
CAPACITIES); CITY OF BUENA PARK POLICE        )
OFFICER FRANK NUNES (IN HIS OFFICIAL AND      )
PERSONAL CAPACITIES); AND UNIDENTIFIED        )
CITY OF BUENA PARK POLICE OFFICERS DOES       )
10-20; CITY OF BUENA PARK; CITY OF BUENA      )
PARK POLICE DEPT; BUENA PARK POLICE           )
CHIEF TOM MONSON; COUNTY OF ORANGE;           )
ORANGE COUNTY DISTRICT ATTORNEY TONY          )
RACKAUCKAS (IN HIS OFFICIAL AND               )
PERSONAL CAPACITIES); and unidentified        )
administrative agencies DOES 20 through 30, inclusive,  )
                                              )
              Defendants.                     )
                                              )
                                              )
                                              )
                                              )
                                              )
                                              )